ILLINOIS CENT. R. CO. v. STEWART.

(Circuit Court of Appeals, Eighth Circuit. April 14, 1915.)

No. 4320.

1. DEATH ☞49—ACTION UNDER EMPLOYERS' LIABILITY ACT—SUFFICIENCY OF PETITION.

The petition in an action against an interstate railroad company for the death of an employé *held* sufficient in its allegations respecting the next of kin of deceased to state a cause of action under the federal Employers' Liability Act (Act April 22, 1908, c. 149, § 1, 35 Stat. 65 [Comp. St. 1913, § 8657]).

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 64–66, 69; Dec. Dig. ☞49.]

2. MASTER AND SERVANT ☞243—CONTRIBUTORY NEGLIGENCE—RULES OF COMPANY.

Failure of employés to observe a rule of a railroad company *held* not contributory negligence constituting a defense to an action for death of an employé.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 682, 759–775; Dec. Dig. ☞243.]

3. MASTER AND SERVANT ☞289—ACTION FOR INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action for the death of an employé, who, while repairing a defective coupling on a car standing with others on a delivery track, was struck and killed by other cars which moved down against him by gravity, where the evidence showed that deceased, with another, inspected the cars and found the defect, that the defective part could ordinarily be replaced in a minute, and that the car was loaded and waiting for delivery, the question whether deceased was chargeable with contributory negligence in not marking the car for removal to the repair track *held* properly submitted to the jury, there being no rule which required such removal.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. ☞289.]

4. MASTER AND SERVANT ☞210—MASTER'S LIABILITY FOR INJURY TO SERVANT—ASSUMPTION OF RISK.

An instruction that a railroad employé, who was struck and killed by cars left standing on a delivery track and which moved downgrade be-

cause the hand brakes had not been set, did not assume the risk from such danger, *held* correct.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 554–556; Dec. Dig. ☞210.

Assumption of risk incident to employment, see note to Chesapeake & · O. R. Co. v. Hennessey, 38 C. C. A. 314.]

In Error to the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

Action at law by Lillie M. Stewart, administratrix of the estate of Harry M. Toft, against the Illinois Central Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Wm. Baird & Sons, of Omaha, Neb., Helsell & Helsell, of Ft. Dodge, Iowa, and Blewett Lee and W. S. Horton, both of Chicago, Ill., for plaintiff in error.

J. A. McKenzie, of Omaha, Neb. (McKenzie & Cox and J. E. Von Dorn, all of Omaha, Neb., on the brief), for defendant in error.

Before HOOK and CARLAND, Circuit Judges, and AMIDON, District Judge.

CARLAND, Circuit Judge. This action was commenced by defendant in error, hereinafter called plaintiff, against plaintiff in error, hereinafter called defendant, to recover damages for negligently causing the death of one Harry M. Toft on January 27, 1913. Deceased was an employé of the South Omaha Joint Car Inspection Association, and defendant was engaged in interstate transportation, using the services of the Car Inspection Association in connection with other railroads. On the above date, at about 9:15 p. m., deceased was engaged in repairing a defective coupling on one of defendant's cars, and while so engaged was caught by a moving car belonging to defendant and fatally injured. The track on which the injury occurred was known as the Illinois Central delivery track. At the place of the injury it had an incline of three-tenths of a foot per 100 feet. There was a string of 18 or 20 cars standing on this track. The car at the northwesterly end of the string had the broken coupling which Toft was repairing. In addition to this string of cars, there were 3 other cars placed on the same track about 15 to 20 feet from the car on which deceased was working. These 3 cars moved by force of gravity, striking deceased and causing his death. The alleged act of negligence submitted to the jury was the leaving of these 3 cars without having the hand brakes thereon set. The alleged errors of the trial court will be taken up in the order in which they are argued by counsel in the brief.

[1] It is first urged that error was committed in the refusal of the trial court to direct a verdict in favor of defendant, for the reason that the complaint showed that the action was brought under the statute of Nebraska, while the evidence showed that the case was one triable only under the federal Employers' Liability Law. St. Louis, I. M. & S. R. Co. v. Hesterly, 228 U. S. 702, 33 Sup. Ct. 703, 57 L. Ed. 1031; St. Louis, S. F. & T. R. Co. v. Seale, 229 U. S. 156, 33 Sup.

Ct. 651, 57 L. Ed. 1129, Ann. Cas. 1914C, 156. This contention is based upon the following allegation of the petition:

"That this action is brought for and on behalf of the next of kin of the said deceased, the said deceased having left no widow or children surviving him; that the mother of the said deceased, Carrie Toft, of the age of fifty-three (53) years, the sister, Mabel Toft, twenty (20) years of age, and a brother, Milton Toft, seventeen (17) years of age, are the only surviving next of kin of the said deceased; that the mother of the said deceased at the time of his death was entirely, and the sister and brother were in part, dependent upon the said deceased for their care, support, and maintenance."

Whether or not the allegation above quoted, was sufficient under the law of Nebraska we need not determine, as we are satisfied that it was sufficient under the federal Employers' Liability Act. Section 1, c. 149, 35 Stat. 65, provides:

"Or, in case of the death of such employé, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employé; and, if none, then of such employé's parents; and, if none, then of the next of kin dependent upon such employé."

The case was in fact tried as one under the federal Employers' Liability Act. The court said in its charge to the jury:

"The action is brought here by Mrs. Stewart, the administratrix; but it is entirely for the benefit of the mother under the statute. Under the circumstances here, no one else is entitled to any recovery. She is the sole beneficiary. The only damages which could be recovered, if any are given, are the pecuniary damages which the mother has suffered by the death of Mr. Toft."

No evidence was introduced at the trial tending to show the age or dependency of the brother and sister. The reference to them in the complaint was treated as surplusage. As the mother was the beneficiary under the federal law, we see no error in this ruling of the court.

[2] It is next claimed that the trial court erred in refusing to direct a verdict in favor of plaintiff in error, for the reason that the evidence showed that the deceased was guilty of contributory negligence. In this connection the following rules were introduced in evidence:

"A blue flag by day and a blue light by night, displayed at one or both ends of an engine, car, or train, indicates that workmen are under or about it; when thus protected it must not be coupled to or moved. Workmen will display the blue signals, and the same workmen are alone authorized to remove them. Other cars must not be placed on the same track so as to intercept the view of the blue signals, without first notifying the workmen."

"Joint Car Inspection Association. All Employees: It has been called to my attention that there are being repairs made to cars on transfers and in Albright without the protection of a flag. In the future, where it is necessary to make repairs on cars, you must protect yourself by flags. W. H. Cressey, South Omaha, Nebraska, February 16, 1911."

It is claimed that the deceased under these rules was bound to protect himself by either a flag or a blue light. Considering, however, the act of negligence which was submitted to the jury, and the further fact that the cars moved by gravity at the time they caught deceased and fatally injured him, it is apparent that a flag or a light would have been no protection against the force of gravity, which neither sees nor hears. As the three cars were placed upon the track before the de-

ceased commenced to repair the defective coupling, no flag or light would be expected at that time. We see no error upon this point.

[3] It is also claimed that the deceased had no authority to make repairs on the delivery track. George Alter, who was an employé of the Joint Car Association at South Omaha, testified as a witness for the plaintiff. He testified that he was called a flying inspector or book-man; that Toft, the deceased, was considered his helper. Alter and the deceased were on duty at the time of the injury. They inspected the 19 or 20 cars standing on the delivery track. There was a defective coupling on the nineteenth car, or the north car in that string of cars. It was the knuckle part of the coupling; the point of the knuckle was broken off, and of course it made it defective, and necessary to be repaired either there or sent back and be repaired. We had knuckles to repair this defective one at our disposal. I discovered the broken knuckle and I made mention to Mr. Toft, and I said, 'You had better put a card on it.'—That meant a bad order card, and he says, 'I will get one and put it in.' It was a loaded car going to the Cudahy Packing Company, I believe—so I didn't say any more. After that, he (the deceased) got this knuckle and started back up to put it in. I was there when he got the knuckle; he picked it out and says, 'I got one,' and put it on his shoulder. He started off, and I went to attend to other business. If a man can get at this repair handily, he can do it in a minute's time; you take out the knuckle pin, throw the old one out and put another one in; if a man has the material right there it can be done in a minute.

In reference to the duty of the deceased as to where he should make the repair of the defective coupling the court charged the jury as follows:

"There is evidence that Mr. Toft had a conversation with Mr. Alter, who was his immediate superior, after it was discovered that this coupling was broken, and that Mr. Alter said he thought he had better put a card on the car, a safety appliance card, and that in the usage of the yards, when that kind of a card is placed upon a car, the car is afterwards repaired and usually removed, perhaps always removed, to another track before the repair is made. But there is also evidence that after that conversation, and after walking the length of the 18 or 19 cars, Mr. Toft obtained a new coupling apparatus to take the place of the one which was defective, and that Mr. Alter knew this, and Mr. Toft put it upon his shoulder and told Mr. Alter he was going to see if he could put it in, and that Mr. Alter made no objections to that conduct.

"I think you at liberty to infer, from those facts and the rest of the evidence, that Mr. Toft had the right, if he chose, in the exercise of good judgment, or his own good judgment, to undertake to make that repair on the car at that place, and that he was not bound to card the car and to require it to be removed, but it was a matter for him to decide as to whether he should do that; and if you find that he did not exercise ordinary care in deciding to undertake to make that repair at that place, but that ordinary care on his part should have required him to remove the car to the repair track, then you would be authorized to find that he was guilty of contributory negligence in undertaking it there, and, of course, that that contributed to his injury, by placing him where subsequently the cars drifted down upon him and caught him.

"The method in which he undertook to make that repair has been disclosed to you. He thought it would take but a minute. It seemed to have taken quite a period longer. It was in the dark. He had a lantern, and there was another employé around him there for a while with another lantern, and he would not be entitled always to absolutely pay no attention to surrounding ob-

jects; and if, in the exercise of ordinary care, he should have kept a lookout around him, and should have seen these cars approaching him in time to have avoided it, you would be authorized to find that he was guilty of contributory negligence in that respect. Whatever you find in the way of contributory negligence, if any, that Mr. Toft was guilty of, if he was guilty of any, should be considered by you in arriving at your verdict."

We are of the opinion that the question as to where the deceased should perform the duty of repairing was properly left to the jury. Again, the rule or instruction of the Joint Car Inspection Association, above quoted, contained no provision against making repairs at any particular place, but it provided that wherever they were made employés should protect themselves by a flag. Mr. Cressey, who signed the instruction, says that his attention had been called to the fact that repairs were being made to cars on transfers and in Albright without the protection of a flag. There was no fault found with the place where the repair was to be made, and he assumed that they would be made on the transfer track. We see no merit in the fifth assignment of error, which relates to the paragraph in the court's charge in regard to the duty of the employés of the plaintiff in error towards other employés working about the cars on the delivery track.

[4] It is next urged that the court erred in charging the jury upon the subject of assumption of risk. The court told the jury that if they found the cars which caught the deceased were moved by the force of gravity, the deceased did not assume the risk incident to the cars being left without the hand brakes being set. There certainly was no error in this instruction, as the deceased only assumed those risks that were known by him or were plainly obvious, and there is no evidence in the record that the deceased heard or saw the cars moving upon him, or knew the hand brakes had not been set. In the absence of knowledge, he could rely upon the presumption that the employés of defendant had performed their duty in setting the hand brakes on the cars. Rules 761 and 821, in evidence.

The seventh assignment of error relates to that portion of the charge in regard to the conversation had between the witness Alter and the deceased hereinbefore quoted.

In view of the fact that the court left the question to the jury as to whether the deceased had a right to make the repairs where he did, the criticism of this portion of the charge, to the effect that it permitted Alter to decide where the repair should be made, in opposition to the rules of the association or railroad company, is not well taken.

Judgment below should be affirmed; and it is so ordered.